IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS FLOWERS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA | : | |
| HEALTH SYSTEM, | : | No. 08-3948 |
| Defendant. | : | |

<u>MEMORANDUM</u>

Schiller, J.                                                                    June 16, 2009

Plaintiff Carlos Flowers brings this action against Defendant University of Pennsylvania Health System, alleging that Defendant discriminated against him, on the basis of race, and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 and the Philadelphia Human Relations Act (PHRA). Defendant has moved for summary judgment on all of Plaintiff's claims. For the reasons discussed below, Defendant's motion is granted.

## I.      BACKGROUND

Flowers, an African-American male, is currently employed by Pennsylvania Hospital, a component of the University of Pennsylvania Health System. (Def.'s Statement of Undisputed Facts [hereinafter "Def.'s SOF"] ¶¶ 1-3.) Flowers received a Bachelor's Degree in Criminal Justice in 1995 and completed a Masters of Art in Special Education in 2007. (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. [hereinafter "Def.'s Mem."] Ex. B at Pl.'s Dep. Ex. 37 [Flowers' Resume].) He worked as a Philadelphia Police Officer from October 1996 though September 2001. (*Id.*) He has also served in the Army Reserve/National Guard since September 1989 and is the "officer in

charge of a platoon of combat engineers." (*Id.*)  Since August 2001, he has worked as a Special Education Teacher, in addition to working part-time with Defendant.  (*Id.*)

Flowers worked for Defendant as a Security Officer, for twenty-five hours each week, from 1994 to 1997.  (Def.'s SOF ¶ 9.)  Flowers left the hospital and pursued work as a police officer and subsequently as a special education teacher.  (Pl.'s Statement of Contested Facts [hereinafter "Pl.'s SOF"] ¶ 9.)  To supplement his income, he returned to the hospital in 2002, working through the present as a Security Officer for 16 hours every other weekend.  (Def.'s SOF ¶ 9.)  Since July 2004, Flowers has worked additional shifts as a Relief Supervisor.  (*Id.* ¶¶ 9, 34.)  In this capacity, he received additional pay for filling in when a supervisor wanted time off.  (Pl.'s Dep. at 91.)  This position was not a promotion, nor did Flowers apply for it through the Human Resources Department; he was instead asked by a regular security supervisor to fill this role.  (Def.'s SOF ¶¶ 35-38.)  Between 2004 and 2008, Flowers applied for seven promotions within the University of Pennsylvania Health System.  (*Id.* ¶¶ 11, 43.)  Three of these positions were awarded to African-American applicants.  (*Id.*)  Plaintiff's discrimination complaint is based on only five of these positions.  (Pl.'s SOF at ¶ 43.)  Of the five positions he identifies, two were awarded to African-American applicants.[1]  (Def.'s Mem. Ex. D at Carolina Dep. Ex. 10 [Def.'s Objections and Resps. to Pl.'s First Set of  Interrogs. [hereinafter "Def.'s Resps. to Interrogs."]] at 4-5.)  Defendant contends that it consistently chose a more qualified applicant than Flowers for these positions.

In 2004 Flowers applied to be Director of Security and Safety at Pennsylvania Hospital. (Def.'s SOF ¶ 44.)  He was interviewed by Steve Wanta, Pennsylvania Hospital's Vice President of

---

[1]  Although Plaintiff does not seek relief for all of the promotions he was denied, the Court will briefly outline Flowers's applications for these positions, as Plaintiff contends that they reveal a pattern and practice of discrimination.

Support Services.  (*Id.* ¶ 49.)   According to Flowers, Wanta asked about Flower's academic credentials and, when told Flowers had a Bachelor's Degree in Criminal Justice, Wanta "slammed his hands on the table and he said 'where you get that from, where you get that,' as if I wasn't supposed to have a degree." (Pl.'s Dep. at 131.)  Wanta then asked Flowers about the safety aspects of the position; Flowers conceded he was not very familiar with the relevant safety procedures. (Def.'s SOF ¶ 49; Pl.'s Dep. at 134-35.)  Lawrence Knicely, who is not African-American,[2] was ultimately chosen for the position.  (Def.'s SOF ¶ 50.)

An opening for a full-time Security Supervisor at Pennsylvania Hospital was posted on or about December 29, 2004.  (*Id.* ¶ 57.)  Flowers did not apply for the position online, but contends that he expressed his interest by writing his name on a posting in the security department.  (*Id.* ¶ 58.) Defendant does not have a record of a resume submitted by Flowers for the position, but according to Flowers a resume he submitted six months later for the position of Operations Manager at the Hospital of the University of Pennsylvania was "probably" the same resume.  (Def.'s SOF ¶ 59; Pl.'s Dep. at 164-65.)  Karl Kinkler, who is not a member of Plaintiff's protected class,  was ultimately hired for the Security Supervisor position.  (Def.'s SOF ¶ 60.)

The Operations Manager position, which Flowers applied for in June 2005, was ultimately awarded to Art Wells, an African-American.  (*Id.* ¶¶ 55-56.).  Plaintiff does not challenge his failure to be promoted to this position.

---

[2]  The parties do not specifically identify the race of the non-African-American individuals chosen over Flowers.  Defendant's interrogatory answers specifically note when an African-American candidate was chosen for a position.  (*See* Def.'s Resps. to Interrogs. at 6-7.) The Court, like the parties, assumes that when the candidate chosen for a position is not expressly identified as African-American, he or she is not a member of Plaintiff's protected class.

In November 2006, Flowers applied for a position as Safety Emergency Coordinator at Pennsylvania Hospital.[3] (*Id.* ¶ 67.) The responsibilities of the position included: "the recognition, evaluation, monitoring, and control of facilities, operational and environmental safety factors . . . ." (*Id.* ¶ 68.) The job posting required "knowledge of health care operations and regulations including JCAHO, OSHA, and related regulatory requirements." (*Id.* ¶ 69.) According to Defendant, Flowers did not meet the minimum qualifications for this position, as his resume did not indicate knowledge regarding "safety and emergency preparedness and response." (*Id.* ¶¶ 70-71; Def.'s Mem. Ex. C [Carolina Dep.] at 78.) Flowers concedes that his knowledge of the relevant safety regulations was limited to what he had learned working in the security department, but contended that he "could have learned more." (Pl.'s Dep. at 234.) John Wierzbowski, who possessed a Bachelor's Degree in Environmental Health and a Master's Degree in Environmental Health and Industrial Hygiene, and had previously served as Industrial Hygienist and Safety Officer at Hahnemann University, was hired for the position. (Def.'s SOF ¶ 73.) Plaintiff agrees that Wierzbowski, who was not a member of Plaintiff's protected class, was better qualified for the position, but contends that he met the minimum qualifications for the job and therefore should have received an interview, per company policy. (Pl.'s SOF ¶ 75; Pl.'s Dep. at 231:10-24.)

In October 2007, Flowers applied for the position of Director of Security at Pennsylvania Hospital. (Pl.'s SOF ¶ 78.) Flowers satisfied the educational requirements for the position and received an interview. (Def.'s SOF ¶ 82; Pl.'s Dep. at 242-43.) The hospital ultimately selected

---

[3] Defendant refers to this position interchangeably as "Safety Emergency Coordinator" and "Security Emergency Coordinator." (*Compare* Def.'s Mot at 11 *with Id.* at 19.) The Court will use the former title, which is used in the job posting for this position. (Def.'s Mot. Ex. B at Pl.'s Dep. Ex. 31 [Job Posting for Safety Emergency Coordinator].)

Darryl Beard, an African-American, for the job. (Def.'s SOF ¶ 85.)  Beard previously served as Associate Director of Public Safety for New Jersey University and had twenty-six years of law enforcement experience. (*Id.* ¶ 86.)  He possessed a Bachelor's Degree in Criminal Science and a Master's Degree in Education, Supervision, and Administration. (Def.'s Resps. to Interrogs. at 6-7.) Flowers admitted that he was not more qualified than Beard. (Pl.'s Dep. at 274-75.)  He does not contend that he was discriminated against in relation to this promotion decision, but instead argues that Defendant hired Beard, an African-American, to retaliate against Flowers for filing his complaint. (*Id.* at 275; Pl.'s SOF ¶ 88.)

Flowers applied for two additional positions that are not the subject of this lawsuit.  In Spring 2008, he applied to be Office Manager at the Penn Sleep Center. (Def.'s SOF ¶ 89.)  Because he failed to meet the minimum job requirements, which included three years of experience as an office or administrative manager,  Flowers was not scheduled for an interview. (*Id.* ¶ 92.)  The position was filled by Patrice Thomas, an African-American female. (*Id.* ¶ 94.)  Flowers next applied, in May 2008, for the position of Assistant Hospital Director for the Hospital of the University of Pennsylvania. (*Id.* ¶ 96.)  Again, Flowers was not scheduled for an interview as he lacked the minimum job requirements. (*Id.* ¶ 97.)  He admits he was not qualified for this position and explains that he applied for it mistakenly. (Def.'s SOF ¶ 98; Pl.'s Dep. at 281-82.)

Flowers also brings a claim of discrimination related to additional responsibilities assigned to Ralph Trovato, who is not African-American.  Trovato received the position of Entrance & Valet Manager in May 2005. (Def.'s SOF ¶ 102.)  Flowers did not apply for this position, believing "it had nothing to do with security." (*Id.* ¶ 101; Pl.'s Dep. at 179-80.)  In 2006, Knicely, the Security Director at the time, delegated to Trovato responsibility for certain day-to-day duties within the

security department, including scheduling officers, screening candidates for security positions, and distributing assignments. (Def.'s SOF ¶¶ 104-05; Carolina Dep. at 98.) In an email to the security department announcing this assignment of duties, Knicely referred to Trovato as "Security Manager Ralph Trovato." (Def.'s SOF ¶ 109.) Knicely did not seek permission from human resources to refer to Trovato in this manner and he testified that he did not consider this title change to be significant, as Trovato already had a management position within the security department. (Knicely Decl. ¶ 15.) Trovato subsequently had a badge made that identified him as "Security Manager" and referred to himself in emails using this title. (Def.'s SOF ¶ 111.) However, his title was never changed in his personnel file. (*Id.* ¶ 112.) Trovato received no increase in pay upon assuming these additional duties.[4] (*Id.* ¶ 114.) Knicely's supervisor learned, though the filing of Plaintiff's discrimination charge, that Trovato was using the title of "Security Manager" and immediately instructed Knicely and Trovato to cease using this title. (*Id.* ¶ 115.) Trovato remains employed as the Entrance and Valet Manager and has not received a promotion. (*Id.* ¶ 117.)

On July 2, 2007, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), which he cross-filed with the Philadelphia Commission on Human Relations (PCHR). (Def.'s SOF ¶ 119; Def.'s Mem. Ex. B at Pl.'s Dep. Ex. 16 [Charge of Discrimination].) The charge referenced his failure to be promoted to three posted positions –

---

[4] Plaintiff disputes this, asserting that Trovato's starting pay as Valet Manager was $19.00 an hour, but as "Security Manager" he was payed $20.76. (Pl.'s SOF ¶ 114.) In support of this claim he relies upon somewhat cryptic notes from the Philadelphia Human Relations Commission. (Pl.'s Mot. Ex. 4 [Flowers Dep. Ex. 38].) Plaintiff did not identify the specific portion of these six pages of notes he was relying upon, but the document states "No more money for RT, $19/hr – 3% annually, now $20.16." (*Id.*). This passage does not support the claim that Trovato received a raise. Instead, this notation is consistent with the testimony of Dorinda Carolina, who declared that Trovato received only cost of living increases. (Carolina Dep. at 108-09.)

Director of Security and Safety (2004), Safety Emergency Coordinator (2006), and Security Supervisor (2005) – as well as an unposted position of "Security Manager," a reference to the additional duties given to Trovato. (Def.'s SOF ¶ 120.) Plaintiff's attorney requested a right to sue notice from the EEOC on April 7, 2008 and sent a copy of this letter to the PCHR. (*Id.* ¶ 122.) The PCHR subsequently closed its investigation of Plaintiff's charge of discrimination on May 16, 2008. (*Id.* ¶ 123.) Plaintiff filed his Complaint with this Court on August 19, 2008 and amended this Complaint on November 3, 2008.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of identifying those portions of the record that it believes illustrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party makes such a demonstration, the burden then shifts to the nonmovant, who must offer evidence that establishes a genuine issue of material fact that should proceed to trial. *Id.* at 324; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party demonstrates a genuine issue of

material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248.

In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S.133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

At the same time, to avoid summary judgment, "a nonmoving party must adduce more than a mere scintilla of evidence in its favor." *Williams v. Borough of W. Chester, Pa.,* 891 F.2d 458, 460 (3d Cir. 1989) (citing *Anderson*, 477 U.S. at 249). Although credibility determinations remain the function of the jury, a judge considering a summary judgment motion by a defendant in a civil case "unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Anderson*, 477 U.S. at 252 (quoting *Improvement Co. v. Munson*, 81 U.S. 442, 448 (1871)).

III.    DISCUSSION

Plaintiff's discrimination claims focus on Defendant's failure to promote him to the Safety Emergency Coordinator position, in 2006, and the unposted "Security Manager" position, a reference to the additional duties given to Trovato. (Pl.'s Resp. to Def.'s Mot. for Summ. J. [hereinafter "Pl.'s Resp."] at 5.) Flowers acknowledges that any claims related to the Director of Security and Safety (2004) and Security Supervisor (2005) positions are time barred. (*Id.*) Nonetheless, Flowers

contends that these instances demonstrate Defendant's "discriminatory pattern" of denying qualified African-American internal applicants promotions in favor of external white candidates.  (*Id.*) Finally, Plaintiff asserts a retaliation claim based on the 2007 hiring for the Director of Security position.

### A.    Plaintiff Failed to Exhaust His Administrative Remedies as to His Claims Under the PHRA.

Before commencing a civil action under the PHRA, a party must allow the Pennsylvania Human Relations Commission (PHRC) "an opportunity to investigate, and if possible, conciliate the matter."[5]  *Barr v. U.S. Reduction Co.*, Civ. A. No. 94-3291, 1996 WL 494142, at *2 (E.D. Pa. Aug. 22, 1996) (citing 43 PA. CONS. STAT. § 962(c)).  Under the PHRA, a Plaintiff cannot file a lawsuit until the PHRC (or PCHR) has been given one year to resolve the controversy.  *See* 43 PA. CONS. STAT. § 962(c)(1); *Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999) ("[A] party must wait one year after filing charges with the PHRC for alleged PHRA violations before having the option to forego the state administrative process and file suit in court.").  When a Plaintiff requests that the PHRC transfer his or her case to the EEOC before one year has passed, and the PHRC subsequently closes the case, the Plaintiff has failed to exhaust her administrative remedies under the PHRA and may not then file a lawsuit.  *Schweitzer v. Rockwell Int'l*,  586 A.2d 383, 386 (Pa. Super. Ct. 1990); *see also Barr*, 1996 WL 494142, *2 (plaintiff failed to exhaust administrative remedies under PHRA when she withdrew her filing with PHRC and transferred action to EEOC); *Lyons v. Springhouse Corp.*, Civ. A. No. 92-6133, 1993 WL 69515, *3 (E.D. Pa. 1993) (granting motion to dismiss PHRA

---

[5]  As other courts in this District have noted, a local agency, such as the PCHR, with whom Plaintiff filed his claim in this case, can undertake an investigation in lieu of the PHRC. *See Kuhn v. Oehme Carrier Corp.*, 255 F.Supp.2d 458, 466 (E.D.Pa. 2003); *Kedra v. Nazareth Hosp.*, 857 F.Supp. 430, 432-33 (E.D. Pa. 1994).

claims for failure to exhaust administrative remedies when Plaintiff, four months after filing administrative complaint, sent Commission letter informing it that he intended to file lawsuit, which caused Commission to dismiss complaint).

Flowers filed his charge with the EEOC and cross-filed with the PCHR on July 2, 2007. Plaintiff's attorney wrote to the EEOC on April 7, 2008 and requested a right to sue notice, copying the PCHR on this correspondence. (Def.'s Mem. Ex. B at Pl.'s Dep Ex. 39 [Letter of April 7, 2008 to EEOC].) On May 16, 2008, the PCHR issued a letter stating that Plaintiff's case before the Commission was dismissed on that same date, for "waiver of jurisdiction to EEOC for right to sue letter." (Def.'s Mem. Ex. F [Letter from PCHR].) Hence, Plaintiff's case was not before the PCHR for the full one-year period required by the PHRA prior to filing in federal court and his PHRA claims are barred.

**B.    Defendant is Entitled to Summary Judgment on Plaintiff's Title VII Discrimination Claims.**

*1.    The McDonnell Douglas Burden-Shifting Analysis*

To state a Title VII discrimination claim, a Plaintiff may use either the pretext theory elaborated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) or the mixed-motive theory of *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). *Makky v. Chertoff*, 541 F.3d 205, 213 (3d Cir. 2008). Under the burden-shifting analysis for Title VII claims set forth in *McDonnell Douglas*, Plaintiff must first establish a prima facie case of discrimination.[6]  *See* 411 U.S. at 802. In the context of a failure to promote claim, a plaintiff establishes a prima facie case by showing: "(i) that

_____

[6]  Assuming *arguendo* they were not barred for failure to exhaust, this burden-shifting analysis would also apply to Plaintiff's PHRA claims. *See Simpson v. Kay Jewlers*, 142 F.3d 639, 644 n.4 (3d Cir. 1998).

he belongs to a [protected category]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citing *McDonnell Douglas*, 411 U.S. at 802). The fourth prong can also be satisfied when the promotion is given to someone with similar qualifications outside the protected class. *See Allen v. Mich. Dep't of Corrs.*, 165 F.3d 405, 410 (6th Cir. 1999).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to assert a legitimate, non-discriminatory reason for the adverse employment decision. *See McDonnell Douglas*, 411 U.S. at 802-03. This burden is a "relatively light" one, satisfied "by articulating a legitimate reason for the unfavorable employment decision." *Fuentes*, 32 F.3d at 763. Once Defendant sets forth such a reason, the burden shifts back to Plaintiff, who must then proffer evidence that the employer's reason is merely a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804. The plaintiff can defeat summary judgment by pointing to direct or circumstantial evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.[7]

--------------------------------------------------------------------------------

[7] Plaintiff contends that he "has evidence sufficient under either a mixed motive or pretext theory." (Pl.'s Resp. at 8.) Plaintiff, however, fails to offer any analysis utilizing the "mixed-motive" theory. In a "mixed-motive" case, "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94 (2003). The "mixed motive" standard is normally used when instructing juries; the Third Circuit has not declared whether it is applicable to summary judgment. *Houser v. Carpenter Tech. Corp.*, 216 Fed. Appx. 263, 265 (3d Cir. 2007). However, our Court of Appeals has said

2.      *Plaintiff fails to establish a prima facie case as to the Safety Emergency Coordinator Position.*

In determining whether a plaintiff is qualified for a position, for the purpose of establishing a prima facie case, courts in this circuit apply an objective standard. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995); *see also Makky v. Chertoff*, 541 F.3d at 215 (prima facie case cannot be established when "there is unchallenged objective evidence that [plaintiff] did not possess the minimal qualifications for the position plaintiff sought to obtain or retain"). Plaintiff did not receive an interview for the Safety Emergency Coordinator position, as Defendant did not believe he met the minimum qualifications. (Def.'s SOF ¶ 70.) The position required "[k]nowledge of health care operations and regulations including JCAHO, OSHA and related regulatory agency requirements as well as fire and safety codes." (Def.'s Mem. Ex. B at Pl's Dep. Ex. 31 [Job Posting].) Flowers testified that his knowledge of JCAHO and OSHA was based on his work in the security department and argued that, although he had not seen the regulations themselves, he "could have learned more." (Pl.'s Dep. at 234.) This testimony fails to establish that Flowers was qualified for the position. As such, he cannot make out a prima facie case of discrimination as to this position. Furthermore, even assuming *arguendo* that Plaintiff could make out a prima facie case, he agrees that the chosen candidate was more qualified for the position, rendering futile any contention that

---

that, were the standard to be applied in the summary judgment context, a plaintiff would need to point to evidence supporting a conclusion that an impermissible factor played a role in the employment decision. *Id.*; *see also Rouse v. II-VI Inc.*, App. A. No. 08-3922, 2009 WL 1337144, at *4 (3d Cir. 2009) (no triable issue when plaintiff, at summary judgment stage, failed to point to evidence that race played role in termination decision). Plaintiff has failed to point to any record evidence, direct or circumstantial, indicating that his race was a motivating factor in any of the employment decisions made by Defendant. As such, the Court will evaluate his claims of discrimination using only the *McDonnell Douglas* analysis.

Defendant's proffered reason for hiring Wierzbowski, namely his superior qualifications, were mere pretext.  (Pl.'s SOF ¶ 75.)

### 3.    The "Security Manager" Position

Plaintiff contends that Ralph Trovato, after being hired as the Entrance and Valet Manager, was subsequently promoted to an unposted position as "Security Manager."  Plaintiff himself did not apply for the Entrance and Valet Manager position.  Trovato was, as noted above, given additional responsibilities by Knicely, but did not receive a raise, nor was he given an official promotion or change in title.  Plaintiff claims he was discriminated against when Knicely gave these additional responsibilities to Trovato instead of to Plaintiff.  To establish a prima facie case of discrimination, a plaintiff must show that she: (1) is a member of a protected class; (2) is qualified for the position; (3) suffered an adverse employment decision; and (4) an individual who is not a member of the protected class was treated more favorably.  *See Simpson*, 142 F.3d at 644 n.5.

Defendant argues that Plaintiff's claims as to the assignment of new responsibilities to Trovato must fail, as Plaintiff has not established that he suffered an adverse employment action and therefore fails to satisfy the third prong of a prima facie case.  A "tangible employment action" is one that causes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  Plaintiff contends that the adverse employment action he suffered was a failure to promote and that, as such, he has made out a prima facie case.  (Pl.'s Resp. at 15.)  However, the Court is not persuaded that the assignment of these additional responsibilities to Trovato, absent any raise or official change in title, constitutes a promotion.

13

A denial of the opportunity to perform additional duties is also not an adverse employment action. *See Traylor v. Brown*, 295 F.3d 783, 789 (7th Cir. 2002) (finding plaintiff did not suffer material harm or adverse employment action when she was not assigned additional duties and "[t]he employees who performed these extra duties received no promotions, higher pay or prestigious titles for doing so"); *Petrosino v. Bell Atlantic*, 385 F.3d 210, 228-29 (2d Cir. 2004) (declaring that although assignment as temporary acting manager, which involved no additional pay or benefits, was "an important first step" towards a promotion, it did not itself "materially alter" job status). Plaintiff has failed to make out a prima facie case.

Assuming *arguendo* that he has made out a prima facie case, Plaintiff's claim still fails. Knicely stated that he did not consider Flowers for the additional duties assigned to Trovato because Flowers only worked part time. (Def.'s Mem. Ex. E [Knicely Aff.] ¶ 13.) Plaintiff points to no evidence in the record that discredits this reason, simply choosing to baldly assert that "[t]his reason is not only ludicrous it is also illogical." (Pl.'s Resp. at 15.) Plaintiff also contends that this reason is merely pretext because Defendant has routinely asserted that its hiring decisions are based on choosing the most qualified individual. If this is the case, Plaintiff argues, he would have been chosen for these additional duties instead of Trovato. Even assuming he possessed stronger qualifications, Plaintiff's argument ignores the fact that the decision to assign new duties, without additional pay or hours of work, was of a qualitatively different sort than a decision of who to hire for a new position. Hence it was reasonable for Defendant, in this context, to choose to assign additional duties to an employee who was regularly there to perform them, rather than to request that a part-time employee like Flowers work additional hours, at added expense to Defendant, to fulfill these duties.

14

4.      *Plaintiff's assertions of a discriminatory pattern or practice*

Plaintiff theorizes that Defendant exhibited a pattern or practice of discrimination in its repeated failures to promote Plaintiff.  As discussed above, Plaintiff cannot establish a *prima facie* case for the only positions that are actionable in this case.  Thus, even if Plaintiff was previously discriminated against, that past discrimination cannot save his failed failure to promote claims.  However, Plaintiff's "pattern or practice" theory also fails on its own.  First, three of the seven positions for which Flowers applied were filled by African-American individuals, a fact that belies Plaintiff's assertions of a pattern of discrimination.  Furthermore, for those positions in which he can arguably establish a *prima facie* case — the Director of Security and Safety and the Security Supervisor positions — he still cannot establish any pretext.  Plaintiff contends that Defendant's proffered reasons for selecting Knicely as Director of Safety and Security are mere pretext and that "Defendant intentionally mischaracterizes each person's qualifications" to establish the legitimacy of its decision.  (Pl.'s Resp. at 10.)  To discredit an employer's proffered reasons "the non-moving plaintiff must demonstrate such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons."  *Fuentes*, 32 F.3d at 765 (citations, quotation marks, and footnote omitted).  The Court finds Plaintiff's attempts to discredit Defendant's articulated reasons for the promotion decision do not satisfy this standard.

Defendant contends that it hired Lawrence Knicely because he was more qualified and possessed "significantly more management level experience."  (Def.'s Mem. at 29.)  Knicely possessed a Bachelor's Degree in Criminal Justice and a Master's Degree in Public

Administration/Administrative Sciences.  (Def.'s Mem. Ex. B at Pl.'s Dep. Ex. 23 [Knicely Resume].)  He had worked for twenty-four years in the Audobon, New Jersey Police Department, attaining the rank of Chief of Police.  (*Id.*)  He also worked as the Safety and Security Manager for a Burlington Coat Factory distribution center.  (Def.'s Resps. to Interrogs. at 6.)  In contrast, Flowers had a Bachelor's Degree in Criminal Justice and was working on completing a Master's Degree in Special Education.  (Def.'s Mem. Ex. B at Pl.'s Dep. Ex. 22 [Flowers' Resume].)  His resume indicates that he had worked for four years in the Philadelphia Police Department and served as a Senior Non-Commissioned Officer in the Pennsylvania National Guard.  (*Id.*)  He also worked part-time as a Security Officer for Defendant, while working full-time as a Special Education Teacher.  (*Id.*)  Flowers testified that he did not believe he had better qualifications than Knicely.  (Pl.'s Dep. at 147-48.)

But, Plaintiff argues that Defendant did not adequately credit Plaintiff's management experience in the National Guard or as a Relief Supervisor.  (*Id.* at 10-11.)  In contrast, he argues, Defendant "fabricates Knicely's OSHA experience by <u>assuming</u> he must have it, despite no record evidence of it anywhere."  (*Id.* at 11.)  To support this allegation, he relies on the deposition of Dorinda Carolina, Chief Human Resources Officer for Pennsylvania Hospital.  Ms. Carolina, the only individual deposed by Plaintiff, began working for Defendant on July 14, 2007 and as such played no role in this hiring decision.  (*See* Carolina Dep. at 10.)  During her deposition she was asked to review Knicely's resume; she stated that his resume led her to believe that he would have had experience with OSHA and noted that she would have asked him about this in an interview.  (*Id.* at 65-69.)  Carolina was asked to review only Knicely's resume and not his full application.  (*Id.* at 64.)  Plaintiff now relies on this testimony as his proof that in its hiring decision Defendant

"fabricate[d] Knicely's OSHA experience" and that Defendant "consistently and deliberately devalued Flowers credentials while overvaluing his Caucasian counterparts."  (Pl.'s Resp. at 11.)  The record evidence relied upon by Plaintiff simply cannot support this claim and any consequent assertion of pretext.

Defendant also argues that it had a legitimate reason for selecting Karl Kinkler for the 2005 Security Supervisor Position, contending he was"the most qualified candidate for the position." (Def.'s Mot at 31.)  Kinkler possessed a Bachelor's Degree and a Master's Degree in Criminal Justice and had graduated from the West Point Leadership and Command Program.  (Def.'s SOF ¶ 62.)  He had worked for twenty-seven years in the Woodbury, New Jersey Police Department and attained the rank of Chief of Police.  (*Id.*)  His resume reflected additional private sector management experience.  (Def.'s Mem. Ex. B at Pl.'s Dep. Ex. 27 [Kinkler Resume].)  In contrast, Flowers had only part-time supervisory experience as a Relief Supervisor and in the National Guard.  (Def.'s Mem. at 31-32.)

Plaintiff agrees that Kinkler possessed more formal education in criminal justice and more law enforcement experience than he.  (Pl.'s Dep. at 171-72.)  Nonetheless, he argues that he was more qualified for the position because he was an internal candidate already working as a Relief Supervisor at the hospital, giving him more relevant experience.  (*Id.* at 171; Pl.'s Resp. at 11-12.) Furthermore, Plaintiff contends that Kinkler, an external applicant, had to be trained for the position after being hired, while if Flowers had been hired he would not have needed additional training. (Pl.'s Resp. at 12.)

"In determining whether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, the focus is on the particular criteria or

17

qualifications identified by the employer . . . ." *Simpson*, 142 F.3d at 647.   The "Additional Requirements" identified in the job posting for the Security Supervisor position included "[e]xtensive experience in security guard force operations, preferably in a health setting. Supervisory experience preferred." (Def.'s Mem. Ex. B at Pl.'s Dep. Ex. 26.)   Flowers has not offered evidence that discredits Defendant's reason for selecting Kinkler.   Instead, Flowers argues that he should have been chosen because he was already working in a health care setting and in a similar capacity on a part-time basis.   While Flowers may wish that Defendant gave this experience greater weight, it did not and, more importantly, it was not required to.   It is not for the court to now independently apply the selection criteria desired by Plaintiff.   *See Simpson*, 142 F.3d at 647.   Plaintiff has failed to show that Defendant's proffered reason for hiring Kinkler was pretextual.   Defendant's hiring decisions as to these two positions fail to provide any evidence of a pattern or practice of discrimination.

### C.    Defendant is Entitled to Summary Judgment on Plaintiff's Retaliation Claim.

#### 1.    *Plaintiff failed to exhaust his retaliation claim.*

Defendant contends that Plaintiff's retaliation claims, which relate to the 2007 hiring of a Director of Security, fail as a matter of law due to Plaintiff's failure to exhaust administrative remedies.   (Def.'s Mem. at 20-22.)   "[T]he relevant test in determining whether [a plaintiff] is required to exhaust her administrative remedies . . . is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) (citing *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)).   Plaintiff filed his EEOC charge prior to the posting of this position.   He never amended his charge, nor did he file a subsequent charge of retaliation related to this position. (Def.'s SOF ¶ 121.)   The EEOC charge and Plaintiff's PCHR complaint never mention the word

"retaliation," focusing instead on discrimination claims.  (Def.'s Mem. Ex. B at Pl.'s Dep. Ex. 16 [Administrative Charge and Compl.].)

Plaintiff contends that his retaliation claims fall within the scope of the investigation of his discrimination claims.  According to Plaintiff, the PCHR investigator, in the course of his investigation, "alerted Flowers that he believed the failure to hire him as the Security Director may have been retaliation for Flowers having filed his complaint."  (Pl.'s Resp. at 6.)  However, the record does not support a retaliation claim.  (*Compare* Pl.'s SOF 121 *with* Pl.'s Dep. at 253.) Plaintiff relies on what is purportedly the unauthenticated notes of the investigator, which state, in an entry dated 12/10/07: "Not sure if he wants to file retal.  Wants to leave."  (Pl.'s Mot. Ex. 4 [Flowers Dep. Ex. 38].)  This notation does not lend itself to the conclusion that the investigator believed the failure to hire Plaintiff as Security Director may have been retaliatory.  When asked about this notation, Plaintiff stated, "I said to him I didn't want to file retaliation."  (Pl.'s Dep. at 253.)

The Third Circuit has rejected the position of other circuits, which have held "that any complaint of retaliation occurring during the time when prior EEOC complaints are pending necessarily falls within the scope of those complaints." *Robinson v. Dalton*, 107 F.3d 1018, 1024 (3d Cir. 1997) (citations omitted).  Instead, in this circuit, courts must determine, on a case-by-case basis, whether the claim at issue falls within the EEOC complaint and subsequent investigation. *Id.* However, "if the EEOC investigation is too narrow, a plaintiff should not be barred from raising additional claims in district court." *Id.* at 1026.  The district court must determine whether an investigation was reasonable. *Id.*  In *Robinson*, the Third Circuit offered factors a district court might consider in making this determination.  Most relevant to this case is "whether the EEOC

should have been put on notice of [Plaintiff's] claim of retaliatory discharge and therefore investigated the claim." *Id.*

At the very least, if this Court accepts them as true, the investigator's unauthenticated notes indicate that he was aware of a potential retaliation claim. However, this same notation, and Plaintiff's testimony, indicate that the investigator was told by Flowers that he did not wish to pursue a retaliation claim. Given this fact, it is reasonable that the investigator did not expand his investigation to include the retaliation claim. *See Porchia v. Cohen*, Civ. A. No. 98-3643, 1999 WL 357352, at * 9 (E.D. Pa. June 4, 1999) ("Plaintiff cannot now argue that the second investigation ought to have included an investigation into her retaliation claim, when she herself did not believe such investigation necessary or warranted."). Plaintiff, given the opportunity to exhaust his administrative remedies, declined to do so. As such, his retaliation claim is barred.

2. *Plaintiff's retaliation claim fails on the merits.*

Even if, assuming *arguendo*, Plaintiff's retaliation claim was not barred, it fails on the merits. A retaliation claim is analyzed using the same burden-shifting framework as a discrimination claim. To establish a prima facie case of retaliation, a plaintiff must show that he or she: (1) engaged in a protected activity; (2) was subsequently or contemporaneously subject to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir.1997). Defendant, for purposes of summary judgment, accepts that Plaintiff can make out a prima facie case of retaliation. (Def.'s Mem. at 37.) Defendant argues that it has proffered a legitimate reason for selecting Beard as Director of Security – that he "was objectively more qualified than Plaintiff." (*Id.*) Beard had extensive experience, including twenty-six years in law enforcement and service as Associate Director of Public Safety for

New Jersey City University, where he supervised five senior-level managers and fifty-two security officers. (Def.'s SOF ¶ 86.)  Defendant believed this experience rendered Beard more qualified than Flowers, who lacked full-time management experience.

"To obtain summary judgment [on a retaliation claim], the employer must show that the trier of fact could not conclude, as a matter of law, (1) that retaliatory animus played a role in the employer's decisionmaking process and (2) that it had a determinative effect on the outcome of that process." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir. 1997).  Defendant has met this standard.  Plaintiff points to no record evidence to discredit Defendant's reasons for hiring Beard or that indicate retaliatory animus existed.  He instead offers the following convoluted theory to show that Defendant's motivation was retaliatory: (1) the assignment of additional duties to Trovato establishes that Defendant's "assertion that its hiring decisions are based on the most qualified applicant is pure fiction and a hoax,"; (2) had Plaintiff not filed his charge, Trovato, rather than Beard, would have been chosen for the position; (3) Trovato was not the most qualified individual; and (4) therefore, "Beard was only hired in direct response to Flower's Complaint, not because he was more qualified." (Pl.'s Resp. at 17.)  According to Plaintiff, the hiring of Beard was retaliatory in that Defendant intended to convey to Plaintiff that, regardless of his credentials, he would never receive a promotion after having filed his complaint.  This contention is not at all supported by the record, nor does it follow from the theory proposed by Plaintiff.  Plaintiff has failed to point to sufficient evidence for a reasonable jury to disbelieve Defendant's reason for hiring Beard or to conclude that this hiring was motivated by retaliatory animus.  Defendant is entitled to summary judgment on these claims.

**IV.      CONCLUSION**

Plaintiff has failed to provide sufficient evidence to create a genuine issue of material fact as to his discrimination and retaliation claims.  Moreover, he failed to exhaust his claims under the PHRA and his retaliation claim under Title VII.  As such, Defendant is entitled to summary judgment on all claims.  An appropriate order will be docketed with this opinion.